1-2909 Compulife v. Moses Newman et al. Mr. Rothman. Thank you again, Your Honor, and may it please the Court, Joel Rothman and Leila Wynn on behalf of Compulife and also my client Robert Barney is here. I think perhaps the better caption, short caption for the case would be Compulife v. Zurich. What we have here is after the second trial, we contact Zurich, who we only learn exists in this case and provided and sold an errors and omissions policy to Biniam and Rutstein and AWD. We only learn that after the first trial. Why weren't we told before? I don't know. We find out after the second trial. Up to Your Honors, go back down again, have another trial, have the outcome which you know about. Mr. Biniam and Rutstein being defended here by Zurich under a reservation of rights since after the first trial. And so after the second trial, we contact Zurich with respect to their E&O policy which provides for indemnity as well as defense and we say, please pay us, we have a judgment. And your client is responsible for it. You're insured is responsible for it. And they say no. And so we garnish the policy and we engage in litigation over whether the policy applies. At no point up till even now has Zurich ever filed a declaratory judgment action against Biniam and Rutstein seeking to a determination from a court of no coverage. But it's not required to. I mean, most insurers do that but they're not required to seek a deck judgment. Oh, they're not. And in a sense, they've gotten a judgment from the district court that indicates there is no indemnity which we are here appealing. But they're still defending the case even while they argue that the policy provides no coverage. So why? In Florida at least, usually, the duty to defend is broader than the duty to indemnify. So there are cases where an insurer just to be on the safe side continues defending especially when a claim is on appeal so that it's not going to get socked with a bad faith claim later and continues to fight on the indemnity side. So you're right that the posture may be unusual but there's nothing crazy about it. I'm not and of course, Your Honor said a couple of days ago and it's true. The duty to defend is broader than the duty to indemnify. But what the district court determined below with respect to the duty to indemnify on de novo review should be reversed because in fact this policy provides coverage for what was going on as we have just explained. Benjamin Rutstein ran an insurance agency in name with an insurance license and during the period of time 2015 to 2017, it earned $187,000 in commissions it could not have earned but for the insurance license, the insurance agency and someone was damaged. Now, my client is not in the role of an insured. Most errors and omissions in the context of an E&O policy for an insurance agent are usually where, you know, a person comes to purchase insurance and ends up purchasing not what they asked for but they get something else and then there's a claim and they don't have coverage, the usual facts. But there's nothing about these facts that take it out of coverage. Well, doesn't the fact that the insured was tagged with an intentional tort as opposed to a negligent tort take it outside of coverage? No because the actual conduct that Benjamin Rutstein exhibited that the facts showed that all the evidence indicated and he himself admitted to, that was all negligent conduct. See, that seems like you can't make that argument given that you have won an intentional tort against him. I mean, there's a concept called judicial estoppel, right? So you have established in a court of law that he committed an intentional tort against your client and now you are here arguing that he didn't commit an intentional tort against your client, that he was merely negligent. I'm not arguing that Mr. Benjamin Rutstein did something intentionally to my client. I am arguing that what he did was he failed to supervise and control his business, the use of his license, the thing that Zurich insured and that thing was what was used to enrich Mr. Rutstein and the other Mr. Rutstein and the other defendants to the tune of $187,000. And they were all accused of acting in concert. They were all accused of playing a part in it and the part that Benjamin Rutstein played was, in his words, I let them use my license. Yeah, but so I mean, so you're saying and I just maybe this is the way the world works but so you're saying an insurance company gets a request to indemnify and the letter comes in and says, we've been held liable for assault and battery. And the insurance company says, okay, well, our policy excludes intentional torts. The insured says, well, you can't just rely on the judgment against me. You have to actually look at what I did because I was only negligent even though I'm being held liable for an intentional tort. Well, what if the world's supposed to work? Right, but what if, Your Honor, I completely understand the hypothetical, but what if the intentional tort is committed by an employee of the company? And the challenge, the argument is that the company failed to supervise that employee. How is that any different from Mr. Benjamin Rutstein? You have a license and you just let somebody else do it. Yeah, but because the tort against the employer would be failure to supervise, not an intentional tort. Right, and in this case, Benjamin Rutstein, the claim against him is he let his insurance license be used so that the defendants could make money and he was included in them, in those defendants, in this scheme. There was a money-making purpose to this. That's intentional. But it's one thing if, for example, and I know this is not the way the world works technologically these days, but if Benjamin had allowed, had left his, let's say that these licenses were still the old-fashioned hard copy, like bar cards, I have this insurance license and left it negligently on his desk one day and someone took it and then used it to scrape, as they did here, CompuLife's protected material. Right, that's one thing. Right, I could see the argument there because what he's alleged to have done through and through was negligent. But if the argument is somebody comes up to him and says, hey, I got a proposition for you. You give me your license. I got this scheme and we're going to get money off of this scheme. Sure, here's my license. A different ballgame. And I, in that particular set of facts, Judge, yes, and may I, no, I still have time. But what was the testimony in the evidence below? Was it, hey, Benjamin, let's use your license so we can make money in this scheme? No. What was the testimony? The testimony was, oh, my dad said they needed the license to recruit agents. There was nothing at all about we need the license to break the law. We need the license to steal. Nothing. And he never learned what his father was doing with this stuff? He just sort of assumed it that it was just to recruit other people? Not until it seems, not until after the fact. He never showed up to the first trial. He never showed up to the second trial. That's the evidence, Judge. But if that's the evidence, then he shouldn't have been, he shouldn't be liable for intentional misappropriation of trade secrets. Well, except that he knew that the use of his license was necessary for some purpose. May I continue? Of course. For some purpose that the defendants were engaged in. And that purpose was to recruit insurance agents and he was negligent in every way and maybe even reckless. And if he was even reckless, it would still come within the policy. And not to mention the fact, and I'll wrap up, Judge, that the decision below wasn't on the intentional exclusion. Okay. We'll give you your rebuttal time. Ms. McCarthy. May I proceed? Yes, please proceed. Okay. Good morning or good afternoon, I guess we're close to. My name is Brooke McCarthy and I'm with the law firm QTAC Rock, LLP. I represent Zurich, American Insurance Company, the Garnasche and the Appellee here in this case. And in this appeal, as we've heard, a compulife challenges the district court's well-reasoned and thorough July 2022 order, which properly granted some judgment in favor of Zurich and determined the errors and omissions policy issued by Zurich to Binyamin Rutzstein does not afford coverage for compulife's trade secret misappropriation judgment against Mr. Rutzstein. I apologize for my. What do you think the critical policy language is? So I think there's three points. The first, and this is where the district court focused its opinion, is on the professional services part. And so the language there, and I'll go to it because that's important for the judgment to fall within the policy's coverage. The claim against Mr. Rutzstein must arise out of a negligent act error or omission of Mr. Rutzstein in rendering or failing to render professional services for an agent. Professional services is defined as the sale, solicitation, and servicing of, in this case, life insurance. Now. The common sense argument, like what the district court essentially concluded was, in giving his license, he wasn't providing advice to anybody with regard to the purchase or consideration of purchase or disposition of insurance. Exactly. In way, shape, or form. Exactly. And the court relied and looked at the fact, looked at his testimony from a 2016 deposition, looked at what he had said, and he said, I never sold any life insurance. I never sold a policy. Maybe I sold one in early 2010, 2011, but as for when the claim, all of the conduct from which the claim arises, I never sold an insurance policy. He further, and so the court looked at that and says, well, that is, yes, you've put your name on a license. He is an agent in name, but not in substance. What profession, how has he in any way, shape, or form engaged in the profession of being an insurance agent? He says, well, I provided some web services and I did a little bit of digital marketing, but in no way was he engaging in providing, soliciting, selling life insurance to others. Why isn't that enough, even if he's serving somehow as a conduit to the, I guess, manifestation of those eventual acts? Well, because it says so. It has to be an erroneous omission in his rendering of the professional services, in his profession as an agent. So he has no profession as an agent. Yeah, he got a license. He got a license in web designers, which was registered as an insurance agency, but they were not selling life insurance. It was essentially a business deal, right? So they were getting leads, they were making commissions off these leads, but they were not selling insurance. He never sold an insurance policy. The policy, an errors and omissions policy in this context is meant to cover, for example, you have a insurance agent who maybe procures the wrong type of insurance, who's essentially trying to get insurance for a client, but not the type of situation, this is an intellectual property dispute between two competitors. I think it's also important to note, too, that what happened, the conduct that's alleged, is illegal conduct, right? It is the misappropriation of trade secrets. So let's say, as a lawyer, you have a license, law license, you set up shop, and to get clients, you have to have that license, you get clients, maybe you provide those clients with some services, they keep their money in a trust account, you then start stealing that money from their trust account, right? You needed to have a license, you needed all those things to do that, but stealing is not a professional service. That's not a professional service. In this context, what happened, he provided the license, he knew that his father was using the license, and that license was used to misappropriate trade secrets, which is not the type of conduct that a policy, like an errors of missions policy in this, is meant to cover. Okay, let's go to second policy language. Second policy language, right. So, we agree with the district court on their professional services and the way they analyze that. Also, so our second point, and this would be an alternative ground, because the district court didn't agree with us underneath, but the second part would be exclusion A, which is an intentional acts, common in a lot of policies. And I'd like to just point the court to a part of that which the district court didn't get into too much, and so I'm just going to read the full exclusion. So, it does not afford coverage for any claim arising out of an act, error, or omission of the insured, committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent. However, notwithstanding the foregoing, the insured shall be afforded a defense, which is what Zurek has done, subject to the terms of the policy until the allegations are subsequently proven by a final adjudication. That's what we have here. That is what the July 2021 decision determined, right. It looked at the facts and it made a determination that Binyamin Rutstein is liable jointly and severally. They can come and get the entire judgment from him for misappropriation of trade secrets. That is a dishonest act. That fits, that squarely falls within that exclusion. And the third one, and maybe our least persuasive of the three, if we're being honest, but the third one is exclusion J, and that a claim is excluded if it arises from the insured's use of confidential information. I don't think anybody disputes that a trade secret, if that's what the court agrees happened, that there was a misappropriation of trade secrets. A trade secret is confidential, and so that exclusion is meant to cover if it arises out of his use of confidential information. Well, the court determined he misappropriated trade secrets. He was involved, right. So he collaborated. It was a joint effort by all parties. All of the things that CompuLife argues that he was involved in doing that support the intentional acts exclusion, they also support application of exclusion J, his use of confidential information. So those are kind of the three places we think the court got it right, the underlying court, the district court got it right on professional services, both because he didn't engage in any professional services, and also because his acts were intentional, not negligent, and for that same reason, the intentional acts exclusion would apply, and also the confidential use of confidential information. On the intentional versus negligent issue, I mean, maybe I'm just looking at this without sufficient nuance, but it seems like the fact that the tort that gave rise to the judgment is an intentional tort should be sufficient for that. Do you have any comment on that? Our position is it should be sufficient. So the court is in this posture and agreed it is typically you have a declaratory judgment. There's a coverage action brought. Oftentimes it's the court saying, well, there's no duty to defend, and therefore no duty to indemnify, right? So here, Zurich agreed to defend because the duty is broad. We get a judgment, and that judgment, the duty to indemnify is based upon the standard that the court must look at is what was decided below. What are the facts decided below, and that, because of that analysis, that determination made by that court is sufficient to apply to the exclusion acts, exclusion A. Okay. I don't have a ton more. I would say I would just note a few things, and we have trouble with the inconsistencies of the arguments that CompuLife is trying to make, right? So they advocated, they said, Benjamin Redstein participated in this scheme. He did all of these things. Therefore, he should be liable for the full amount misappropriation of trade secrets to the Mr. Redstein, and then come back and say, well, here in these proceedings, no, he's not really, he didn't really do all those things. We think he's maybe just a little bit negligent, but if that's the case, then there shouldn't, they're arguing against the judgment that they got, right? So if the court ends up reversing that, well, then there's no judgment to recover against our client. So in some sense, all of what we're doing also is maybe just, it could be hypothetical, it could be just an advisory exercise, because if the court decides something different on the previous appeal, then that will change what the judgment is, that changes indemnity coverage. But all we have is what that judgment says, and that determines basically applying the policy, contract determination, which the court made, properly made, and that's what we're stuck with. So I think that you can look a little bit to their, even their briefs in the prior appeal, where they say, you know, the evidence shows that he committed these wrongs, the evidence shows he was a part of these wrongs, the evidence shows joint and several liabilities should be imposed, and so that's where we are, that's what we're stuck with. I will just conclude with, we think the court got it right. We'd ask they properly determine the judgment against Binyamin Rutstein as articulated below, did not arise from a negligent act or omission by Binyamin Rutstein in rendering or failing to render professional services. In addition, on alternative grounds, we'd ask that the court could affirm on either exclusion A or J, and for those reasons, those in our brief, we respectfully ask that the court affirm the judgment below. Thank you very much. Mr. Rothman, I actually think that Ms. McCarthy's last point is pretty strong. It seems like you have to pick one or the other. How do you succeed against the insurance company without undermining the district court's ruling as to the underlying claim? I think, I think to really understand this, and you may be right, Judge Brasher, that it's nuance, but I think you really have to understand what was going on below, what the activity was. The insuring agreement refers to not just sale, it says sale, solicitation, or servicing of insurance. What were the defendants doing? They were soliciting the sale of life insurance. Were they using trade secrets? But that, but only, that only came after the fact. No, that's what the whole, that the whole reason, the entire reason why this NAIP, and before that, MBM LifeQuotes existed, it was all for the purpose of soliciting. Sure, at the end of the day, but you had to scrape and do what you had to do before you could solicit. No, Your Honor, they attacked, the first thing that was done was they obtained access to my client's data, in the first case, through MBM LifeQuotes, and they solicited policies to people who came to the website, right, using my client's data to entice them with insurance quotes, and then they earned override commissions. So, in other words, it wasn't just one insurance agent being paid. There was a wholesaler, and this group that is the defendants who were facilitating it, who were entitled to a cut, it was all a solicitation of life insurance scheme, where when a policy was sold, and a commission was paid, the defendants got a cut, and they got a cut because there was an insurance license associated with one of the defendants, Benjamin Rutzke, and Benjamin didn't supervise the use of it, and he was supposed to because that was part of the solicitation of insurance. Was it some kind of like lesser included offense that the intentional tort necessarily includes negligent behavior? If I was back in my days as a prosecutor, then yes, I would probably have charged it, right, as part of a, as a, they were a conspirator, right, as in part in the scheme. That's what he was. He provided the instrumentality to commit the offense and to earn the money, and what was that instrumentality? It was his to my client, the 187,000 meager dollars that my client got after trial, not, not the punitive damages. We haven't asked them for a penny of the punitive damages, just the actual damages in unjust enrichment. All of that was money the defendants put in their pockets, and without Benjamin Rutzke's license, they couldn't have gotten a penny of it, and they got it because they were able to go to this wholesaler called One Resource Group and say, listen, we have an insurance license. We're going to bring you leads. You're going to provide the life insurance coverage for it so we can bind these policies. We'll bring you the people. You'll do the paperwork, and you'll pay the commission, and we'll get a piece. That's what it was. Your Honor is absolutely right. If, if I were charging this, yeah, this was a member of the conspiracy, and, you know, in, under these circumstances, they're, the acting in concert that Benjamin was part of this scheme, and his failure to control the use of his insurance license was what led to this, and I understand. If it's not, if it's not, I, I know you were, I know you were using the criminal example in response to a question, so I don't want to saddle you with that. Please don't. But, but, but, but in, but in that, in that hypothetical, he can't be a member of a conspiracy for acting negligently. Well. The criminal law doesn't recognize. No, I understand, yes. You got to be at least, in some cases, reckless, but nothing less than that. Right, and my answer, yeah, and, and he was reckless. We argue that, and there's nothing about his reckless, recklessness that would take it out of coverage, right? Okay. So you have the ability either under Novo Review to reverse, remembering that the policy really needs to be read against them, or to send it back for a trial and let the district court determine whether or not there really is coverage. Thank you very much, your honors. Okay, thank you both very much. That's the end of our long day. We're in recess until tomorrow.